IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JAYSON BRANDJES, | § | |
| | § | MDL NO. 2543 |
| *Plaintiff*, | § | 1:14-MD-2543-JMF |
| | § | |
| v. | § | HON. JESSE M. FURMAN |
| | § | |
| GENERAL MOTORS, LLC, | § | CIVIL ACTION NO. |
| | § | |
| *Defendant*. | § | COMPLAINT |
| | § | |
| | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COME NOW Plaintiff, Jayson Brandjes (hereinafter the "Named Plaintiff" or "Plaintiff"), through the undersigned counsel, who respectfully show as follows:

**PRELIMINARY STATEMENT**

1.      The Named Plaintiff's cause of action is brought solely against GENERAL MOTORS, LLC ("New GM"). The Named Plaintiff does not assert any causes of action against General Motors Corporation ("Old GM").

2.      Any references to General Motors Corporation, Old GM, or pre-sale order conduct in this Complaint are for background and reference purposes, and to establish the genus of Old-to-New employees' knowledge of the safety defects described herein as well as said employees' wrongful, negligent actions and inactions with respect to the same. Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("Purchase Agreement"), New GM acquired certain Old GM assets and product liabilities, including product liability for crashes involving Old GM vehicles causing personal injury, loss of life, or property damage. New GM also acquired knowledge of Old GM's activities and the defective airbag systems identified herein,

via the mind of the employees, officers, managers, as well as via books, and records obtained and/or acquired as a result of the Purchase Agreement and subsequent Sale Order, as further defined by the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al.*, *f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG).  Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM.  Further, as identified therein, the Plaintiff has claims for crashes involving an Old GM vehicle ("GM vehicles") that caused personal injury, loss of life, or property damage and New GM is, therefore, liable to the Named Plaintiff.

**PARTIES**

3.     Plaintiff Jayson Brandjes is, and was at all times relevant hereto, a resident of Parkersburg, West Virginia.

4.     Plaintiff asserts claims against Defendant General Motors LLC ("New GM") for personal injuries stemming from an incident which occurred on November 22, 2015, involving Plaintiff's 2003 Chevrolet Trailblazer (VIN 1GNDT13S132188572) (hereinafter, "Vehicle" or "Subject Vehicle".)  A recall was issued for 2003 Chevrolet Trailblazers related to the failure of the side airbag to deploy as designed and the airbag inflator could rupture (Recall No 03V051000).  Plaintiff did not receive notice of this recall.  It also appears the prior owner never received this recall either based on the Carfax report.

5.     The Named Plaintiff's personal injury claim involves a Defective Vehicle, specifically a 2003 Chevrolet Trailblazer.  Defendant New GM is a Delaware limited liability company.  On July 10, 2009, New GM acquired substantially all of the assets and assumed product liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code.  New GM assumed product liabilities of Old GM, which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 1, 2009.  Pursuant to the Agreement and other orders

2

of the Bankruptcy Court, Defendant New GM purchased the assets of Old GM and hired many, if not most, of Old GM's employees including, on information and belief, most of the same senior-level management, officers, and directors. New GM also acquired Old GM's designs, tools, inventory, books, records, and its key contracts, among other essential assets.

6.     Under the Purchase Agreement, New GM assumed liability for crashes after the closing date of the Purchase Agreement involving Old GM vehicles causing personal injury, loss of life, or property damages.

7.     New GM also assumed product liabilities of Old GM, including certain statutory requirements:

> From and after the Closing, Purchaser [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller [Old GM].

8.     In addition, New GM set forth that:

> From and after the Closing, Purchaser [New GM] shall be responsible for the administration, management and payment of all Liabilities arising under (i) express written warranties of Sellers [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws.

9.     At all times relevant to the claims in this lawsuit, Old GM and New GM were in the business of developing, manufacturing, and marketing cars throughout the United States generally, and specifically in the Plaintiff's state of citizenship. New GM has a network of authorized retailers that sell its vehicles and parts throughout the United States. New GM maintains its principal place of business at 300 Renaissance Center, Detroit, Michigan.

**JURISDICTION**

10.     This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and the Plaintiff and New GM are citizens of different states.

**FACTUAL BACKGROUND**

**General Background**

11.     Plaintiff Jayson Brandjes was driving a 2003 Chevrolet Trailblazer on November 22, 2015, on 18th Street at the intersection of 18th Street and Liberty Street in at US 1 in Parkersburg, West Virginia, when he was driving through an intersection and another vehicle failed to yield the right of way and struck his vehicle, causing it to rollover.  The accident resulted in frontal, side, and rear damage to his vehicle and all of his airbags failed to deploy, including the side airbags.  Clearly, there was a defect in the airbag system/passenger restraint system since the airbags failed to deploy with the impact in this accident.  Further, this Plaintiff's vehicle/vin was never issued a recall, yet other similar Chevrolet Trailblazers made in 2003 did receive recalls.

12.     An automaker should never place profits above safety and should never conceal from consumers or the public any defects that exist in its vehicles.  New GM's Vehicle Safety Chief, Jeff Boyer, recently proclaimed that "Nothing is more important than the safety of our customers in the vehicles they drive."  *GM Announces New Vehicle Safety Chief*, *available at* http://democrats.energycommerce.house.gov/sites/default/files/documents/Testimony-Barra-GM-Ignition-Switch-Recall-2014-4-1.pdf.

13.     Indeed, the first priority of a car manufacturer should be to ensure that its vehicles are safe and, in particular, have working airbag systems, passenger restraint systems, and other

safety features that can prevent or minimize the threat of death or serious bodily harm in a collision. In addition, a car manufacturer must take all reasonable steps to ensure that once a vehicle is running, it operates safely, and its critical safety systems (such as its airbag systems and passenger restraint systems) work properly until such time as the driver shuts down the vehicle. Moreover, a manufacturer that is aware of a dangerous design defect that causes its airbags or passenger airbag systems not to function properly must promptly disclose and remedy such defects.

14.    To date, Old GM and New GM have designed, manufactured, marketed and/or sold millions of automobiles installed with defective airbag systems and passenger restraint systems in General Motors brand vehicles.

15.    In addition, or in the alternative, Old GM and New GM have sold millions of vehicles suffering from the other, similar, potentially life-threatening major defects. As will be shown at trial, all the knowledge of Old GM with respect to these defects was inherited by or is imputable to New GM within the meaning of the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al.*, *f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG).

16.    On July 9, 2009, the United States Bankruptcy Court approved the sale of substantially all of Old GM's assets to New GM which retained the vast majority of Old GM's senior and management level executives and engineers who knew that Old GM had manufactured and sold millions of vehicles afflicted with an airbag system and/or passenger restraint system defect. Those employees' knowledge regarding said defect is imputed to New GM, whenever obtained.

17.    On or around the day of its formation as an entity, New GM also acquired, *inter alia*, the knowledge of the contents of Old GM's "files" and company "documents". To that end,

New GM acquired notice of the safety-related defects contained in Old GM's files, including numerous engineering reports, investigative reports, failure analyses, technical service bulletins, and other documentation concerning the common defects in the airbag systems/passenger restraint systems described herein.

18.     Defendant New GM also had ongoing obligations under the Safety Act to monitor both Old GM and New GM vehicles on the road, to make quarterly reports to NHTSA, and to maintain all relevant records for five years.  Defendant New GM explicitly accepted Safety Act responsibilities for Old GM vehicles in §6.15 of the Sale Agreement through which it acquired substantially all of Old GM's assets.

19.     The Safety Act and related regulations require the quarterly submission to NHTSA of "early warning reporting" data, including incidents involving death or injury, claims relating to property damage received by the manufacturer, warranty claims paid by the manufacturer, consumer complaints, and field reports prepared by the manufacturer's employees or representatives concerning failure, malfunction, lack of durability, or other performance issues. 49 U.S.C. §30166(m)(3); 49 C.F.R. §579.21.  Manufacturers must retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  49 C.F.R. §576.5 to §576.6.

20.     The Safety Act further requires immediate action when a manufacturer determines or should determine that a safety defect exists.  *United States v. General Motors Corp.,* 574 F. Supp. 1047, 1050 (D.D.C. 1983).  A safety defect is defined by regulation to include any defect that creates an "unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle" or "unreasonable risk of death or injury in an accident."  49 U.S.C.

§30102(a)(8).  Within five days of learning about a safety defect, a manufacturer must notify NHTSA and provide a description of the vehicles potentially containing the defect, including "make, line, model year, [and] the inclusive dates (month and year) of manufacture," a description of how these vehicles differ from similar vehicles not included in the recall, and "a summary of all warranty claims, field or service reports, and other information" that formed the basis of the determination that the defect was safety related.  49 U.S.C. §30118(c); 49 C.F.R. §573.6(b)-(c).  Then, "within a reasonable time" after deciding that a safety issue exists, the manufacturer must notify the owners of the defective vehicles.  49 C.F.R. §577.5(a), §577.7(a).  Violating these notification requirements can result in a maximum civil penalty of $15,000,000.  49 U.S.C. §30165(a)(1).

21.     Defendant New GM used several processes to identify safety issues, including the Transportation Recall Enhancement, Accountability and Documentation ("TREAD") database and Problem Resolution Tracking System ("PRTS").  The TREAD database, used to store the data required for the NHTSA early warning reports, was the principal database used by Old and New GM to track incidents related to Old and New GM vehicles.  The database included information from (i) customer service requests; (ii) repair orders from dealers; (iii) internal and external surveys; (iv) field reports from employees who bought Old and New GM vehicles and from Captured Test Fleet reports; (v) complaints from the OnStar call center; and (vi) a database maintained by the Old and New GM legal staff to track data concerning complaints filed in court.  A TREAD reporting team would conduct monthly database searches and prepare scatter graphs to identify spikes in the number of accidents or complaints related to various Old and New GM vehicles.  The PRTS is a database that tracks engineering problems identified in testing, manufacturing, through warranty data and through customer feedback.  The PRTS process

involves five steps: identification of the issue, identification of the root cause, identification of a solution, implementation of the solution, and feedback.

22.     Because the same employees carried out the TREAD Act obligations at Old GM and Defendant New GM, they not only retained the knowledge they acquired at Old GM – they were in fact required to do so. This further supports the propriety of imputing the knowledge of Old GM employees to New GM, even where that knowledge stems in part from their performance of the same or similar roles at Old GM.

23.     In setting forth the knowledge and conduct of Old GM in connection with the defects set forth herein, Plaintiff alleges that New GM is liable for the actions of Old GM only with respect to the Products Liability claims for compensatory damages, which are an Assumed Liability. With respect to Plaintiff's independent claims, Plaintiff does not seek to hold Defendant New GM liable for the actions of Old GM. Instead, the knowledge and conduct of Old GM is generally important and relevant because it is imputed to Defendant New GM under governing principles of agency law.

24.     Numerous Old GM employees carried knowledge of airbag system and passenger restraint system defects with them into their continued employment at New GM after the July 10, 2009 Bankruptcy Sale.

25.     New GM received customer complaints of airbags failing to deploy in a frontal collision in the make and model of Plaintiff's vehicle, including the following:

- TAKATA RECALL - I BELIEVE THIS IS A TAKATA RECALL, THOUGHT I CAN'T FIND THE INFORMATION. I HAVE A 2003 CHEVY TRAILBLAZER. WE RECENTLY HAD A HIGH IMPACT COLLISION RESULTING IN INJURIES, DIRECTLY AS A RESULT OF A FAILURE OF AIRBAGS TO DEPLOY UPON IMPACT. THE VEHICLE WAS IN MOTION, TRAVELING STRAIGHT AT APPROXIMATELY 45 MILES PER HOUR, WHEN WE STRUCK ANOTHER VEHICLE IN THE ROAD ILLEGALLY. (08/12/2017)

- THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 35 MPH, THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. THE

CONTACT'S VEHICLE WAS STRUCK FROM THE FRONT END BY ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE LEFT LEG AND LEFT ARM, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED. IT WAS NOT DETERMINED WHETHER OR NOT THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 150,000. (03/25/2017)

- I WAS INVOLVED IN A HEAD-ON COLLISION, I WAS GOING AROUND 10-15 MPH AND THE VEHICLE THAT CAUSED THE ACCIDENT WAS GOING FASTER THAN I WAS GOING. MY AIRBAGS DID NOT DEPLOY. THEY SHOULD DEPLOY BETWEEN 8-14 MPH. IS ANYONE HOLDING GENERAL MOTORS ACCOUNTABLE FOR THEIR NEGLIGENCE? WE WERE ON A TWO LANE CITY STREET. (03/25/2017)

- THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT ANOTHER DRIVER IN FRONT OF HER SLAMMED ON THE BRAKE PEDAL, WHICH CAUSED THE CONTACT TO LOSE CONTROL OF THE VEHICLE. AS A RESULT, THE CONTACT'S VEHICLE EXPERIENCED A ROLLOVER. NONE OF THE AIR BAGS DEPLOYED. THE CONTACT SUSTAINED A DEEP LACERATION TO THE KNEE AND A TORN LIGAMENT THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS DESTROYED AND TOWED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 120,000. THE VIN WAS NOT AVAILABLE. (05/13/2016)

- THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 40 MPH IN WET WEATHER, THE VEHICLE HYDROPLANED, DROVE OFF A CLIFF, AND CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED CHEST, KNEE AND ARM INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TOWED TO A TOWING AGENCY WHERE IT WAS DEEMED DESTROYED. THE FAILURE MILEAGE WAS 160,000. UPDATED 03/01/17  (11/29/2016)

- THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 78 MPH, A TIRE BLEW OUT. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED. THE VEHICLE WAS DESTROYED AND TOWED. THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED AN INJURED LEFT SHOULDER AND NECK, AND A HEAD ABRASION, WHICH REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 115,000. (02/03/2016)

- THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 20 MPH UPHILL, A VEHICLE TRAVELING DOWNHILL CRASHED HEAD ON INTO THE CONTACT'S VEHICLE. THE FRONTAL AIR BAGS DID NOT DEPLOY. THE PASSENGER SUSTAINED WHIPLASH AND BRUISES TO THE ELBOW, CHEST, AND STOMACH THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE PASSENGER WAS ALSO INJURED AND TAKEN TO THE HOSPITAL, BUT WAS RELEASED THE SAME DAY. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VIN WAS INVALID. THE APPROXIMATE FAILURE MILEAGE WAS 141,000. (10/29/2015)

- THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER 360. THE CONTACT STATED THAT ANOTHER VEHICLE FAILED TO STOP AT A STOP SIGN AND CRASHED INTO THE CONTACT'S VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHERE THE BODY DAMAGES WERE REPAIRED BUT THE FAILURE WAS NOT DETERMINED. THE CONTACT SUSTAINED WHIPLASH, NECK PAINS, BACK PAINS, ARM PAINS, AND PAIN TO THE RIB CAGE THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO THE CONTACT'S RESIDENCE WHERE AN INVESTIGATOR WAS TO DETERMINE THE AIR BAG FAILURE. A POLICE REPORT WAS NOT FILED. IN ADDITION, THE CONTACT STATED THAT THE VEHICLE WAS INVOLVED IN TWO OTHER CRASHES WHERE THE AIR BAGS FAILED TO DEPLOY. THE DETAILS OF THE OTHER TWO CRASHES WERE NOT AVAILABLE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURES. THE APPROXIMATE FAILURE MILEAGE WAS 122,000. UPDATED 11/09/15 (8/9/2013)

- THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER EQUIPPED WITH BF GOODRICH RUGGED TRAIL T/A TIRES, SIZE: P245/65RI7. WHILE DRIVING AT 65 MPH, THE CONTACT HEARD A VIBRATION COMING FROM THE TIRES. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A POLE. THE VEHICLE ROLLED OVER MULTIPLE TIMES AND THE AIR BAGS FAILED TO DEPLOY. IN ADDITION, THE CONTACT NOTICED THAT THE THREADS FROM THE REAR DRIVER SIDE TIRE HAD SEPARATED. THE CONTACT SUSTAINED HEAD, SHOULDER, ELBOW, AND HIP INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VEHICLE AND TIRE MANUFACTURERS WERE NOT NOTIFIED OF THE FAILURE. THE VEHICLE FAILURE MILEAGE WAS 116,000 AND THE TIRE FAILURE MILEAGE WAS 40,000. THE DOT NUMBER WAS UNAVAILABLE. (05/12/2015)

- THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT 45 MPH DURING INCLEMENT WEATHER CONDITIONS, THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO AN EMBANKMENT. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED SPINE INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 90,000. UPDATED 5/11/15 (05/16/2013)

- THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 45 MPH, THE VEHICLE HYDROPLANED AND LOST CONTROL CAUSING THE CONTACT TO CRASH INTO AN EMBANKMENT. THE VEHICLE FLIPPED OVER SEVERAL TIMES AND LANDED ON ITS SIDE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 90,000. UPDATED 5/11/2015 (06/06/2013)

- THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 35 MPH, THE VEHICLE SLID ON ICE AND CRASHED INTO A CEMENT WALL. THE AIR BAGS DID NOT DEPLOY AND THE SEAT BELT DID NOT RESTRAIN THE CONTACT. THE CONTACT SUSTAINED CHEST, NECK, AND KNEE INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE

REPORT WAS FILED. THE VEHICLE WAS DRIVEN TO THE CONTACT'S RESIDENCE. THE VEHICLE WAS THEN TAKEN TO AN INDEPENDENT MECHANIC, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 70,000. (01/24/2015)

- IT WAS SLEETING AND I LOST CONTROL ON A CURVE. I HAD BEEN DRIVING ABOUT 50 MPH, BUT BRAKE BEFORE THE CURVE AND BRAKE VERY HARD WHEN I TRIED TO REGAIN CONTROL OF THE VEHICLE, AS IT WAS SLIDING SIDEWAYS TOWARD THE CURVE. I WENT OFF THE CURVE AND HIT AN ELEVATED CROSSROAD, WHICH SENT THE VEHICLE AIRBORNE. I WAS AIRBORNE OVER MOST OF THE SIDE ROAD, WITH THE REAR OF THE VEHICLE HITTING JUST THE LAST FEW INCHES OF PAVEMENT, WHICH THEN SENT THE VEHICLE NOSEDIVING INTO THE DITCH. THE EMBANKMENTS WERE 4-5 FEET TALL. I HAD TWO VERY HARD FRONT END IMPACTS AND HIT MY HEAD ON THE STEERING WHEEL TWICE. THE FRAME OF THE VEHICLE WAS BENT AND THERE WAS A LOT OF DAMAGE TO THE UNDER OF THE VEHICLE, BUT THE AIRBAGS DID NOT DEPLOY. THE VEHICLE HAS BEEN DEEMED A TOTAL LOSS BY MY INSURANCE COMPANY. I HAVE A LOT OF CONCERN WITH THE FACT THAT THE AIRBAGS DID NOT DEPLOY AND KNOW THAT THERE WERE OTHER VEHICLES OF MY YEAR AND TYPE THAT DID HAVE FAULTY AIRBAGS RECALLED, BUT MINE HAS NOT BEEN. (12/22/2014)

- 2003 CHEVROLET TRAILBLAZER. CONSUMER STATED HER HUSBAND WAS INVOLVED IN AN ACCIDENT, AND THE AIR BAGS DID NOT DEPLOY. CONSEQUENTLY, HE DIED FROM HIS INJURIES. UPDATED 02/09/15. (12/01/2014)

- THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 70 MPH, A DEER JUMPED IN FRONT OF THE VEHICLE CAUSING THE CONTACT TO CRASH. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED A NECK AND BACK INJURY THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 170,000. (11/23/2014)

- DRIVER SIDE: SIDE AIRBAG DEPLOYED WITHOUT WARNING OR CAUSE WHILE SITTING AT STOPLIGHT. AIRBAG STRUCK RECENT LEFT SHOULDER SURGERY CAUSING PAIN IN RECOVERING AREA. ALSO CAUSED LEFT EAR RINGING FOR A COUPLE HOURS. MECHANIC AND CHEVROLET HAVE NEVER HEARD OF SUCH A THING HAPPENING. (11/04/2014)

- DRIVER 55 MILES ON NORTH I-35 FREEWAY ENGINE LOST POWER AND DRIVER HAD NO POWER STEERING NO POWER BREAKS HIT RIGHT SIDE WALL AND HIT LEFT SIDE WALL ON FREEWAY FRONT TIRE BLEW OUT AND SAFETY BELT PULLED OUT OF HOLDER AND DRIVER WAS THROWN ALL OVER AUTO DRIVER HAD CONTACTED GM MOTORS AND THEY SAID THE AUTO WAS NOT ON RECALL LIST AND WAS SAFE AUTO HAD ONE PREVIOUS PROBLEM AS ABOVE LOSS OF POWER BUT ENGINE PICK UP POWER AND RAN THIS ACCIDENT WAS JUST LIKE THE GM RECALL ON THE SWITCH THE DRIVER INJURY SERVERE AND MAY NEVER WALK AGIN DRIVER HAS HAD

TWO SURGERY'S AND STILL IN THE HOSPITAL SINCE 6 15 2014 THIS NEEDS TO BE ON THE GM REPORT FOR DEFECT AUTO LIST (05/06/2014)

- AIRBAGS DID NOT DEPLOY DURING ACCIDENT. VEHICLE WENT THROUGH A GUARD RAIL, SUSTAINED FRONT END DAMAGE. (6/30/14)

- THE CONTACT OWNS A 2003 CHEVROLET TRAIL BLAZER. THE CONTACT STATED THAT WHILE DRIVING AN UNKNOWN SPEED, THE CONTACT ABRUPTLY APPLIED THE BRAKES TO AVOID A CRASH. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A CEMENT BARRIER. THE VEHICLE THEN ROLLED OVER AND LANDED IN AN EMBANKMENT. THE DRIVER'S SIDE AIR BAG FAILED TO DEPLOY. THE CONTACT SUFFERED INJURIES TO THE NECK AND A BROKEN LEG. THE CONTACT ALSO STATED THAT THE IGNITION SWITCH WAS REPLACED TWICE PRIOR TO THE CRASH. THE VIN WAS NOT AVAILABLE. THE VEHICLE WAS DESTROYED. THE CAUSE OF THE FAILURE WAS UNKNOWN. THE FAILURE AND CURRENT MILEAGE WAS 70,000. (11/11/07)

- THE CONTACT OWNS A 2003 CHEVROLET TRAIL BLAZER. THE WAS DRIVING 40 MPH, AND CRASHED INTO THE SIDE OF ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE RIGHT SHOULDER, SPINAL STENOSIS AND FRACTURED KNEES. A POLICE REPORT WAS FILED OF THE INCIDENT. THE CONTACT STATED THAT SHE HAD ALSO BEEN INVOLVED IN TWO PRIOR CRASHES IN WHICH THE AIR BAGS FAILED TO DEPLOY. THE PREVIOUS CRASHES DID NOT RESULT IN ANY INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS INSPECTED BY A REPRESENTATIVE SENT BY THE MANUFACTURER BUT THEY WERE UNABLE TO DETERMINE THE CAUSE OF THE AIR BAG FAILURE. THE FAILURE MILEAGE WAS 80,000. (2/14/08)

- DRIVING APPROXIMATELY 40 TO 43 MPH WHEN ANOTHER VEHICLE TURNED DIRECTLY IN FRONT OF ME. TOTAL FRONTAL DAMAGE BUCKLING UP HOOD ON MY CAR AS I HIT OTHER VEHICLE IN FRONT-END PASSENGER SIDE. THEIR AIRBAG DEPLOYED BUT MINE DIDN'T, EVEN WITH TOTAL FRONT END DAMAGE TO MY CAR. HAD SEATBELT ON, BUT DUE TO IMPACT STILL PULLED MY WHOLE BODY FORWARD (LIKE CRASH TEST DUMMY). THIS WAS A VERY HARD CRASH TOTALING MY CAR. (09/26/2013)

- WHILE TRAVELING IN SLOW TRAFFIC, THE CAR IN FRONT OF MY WIFE STOPPED. BY THE TIME SHE NOTICED THEY STOPPED IT WAS TOO LATE AND SHE HIT THE BACK OF THEIR FORD EXPLORER MOVING AT AROUND 20-30MPH. THE FRONT END OF OUR TRAILBLAZER WAS CRUSHED. MY DAUGHTER AND WIFE WERE WEARING THEIR SEAT BELTS. THE OFFICERS AND PARAMEDICS ON THE SCENE WERE SHOCKED THAT THE AIRBAGS DID NOT COME OUT WITH THE AMOUNT OF FRONT END DAMAGE. THEY HAD TO CUT THE BATTERY WIRES TO PREVENT THE AIRBAG FROM COMING OUT LATER WHEN SHE CLEANED OUT THE TRAILBLAZER. AN EXAMPLE OF HOW MUCH DAMAGE WAS TAKEN TO THE FRONT END, THE CORNER FENDERS WERE PUSHED BACK SO FAR THEY COULDN'T OPEN WITHER FRONT DOOR. THE FENDERS WERE CRUSHED INTO THE DOORS KEEPING THEM SHUT. I WOULD THINK WITH AN IMPACT LIKE THAT THE AIRBAGS WOULD HAVE CAME OUT, IT WAS A SQUARE HIT MEANING EVEN DAMAGE ACROSS THE FRONT END. (07/14/2013)

- THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT HE CRASHED INTO A LIGHT POLE WHILE DRIVING AT UNKNOWN SPEEDS AND THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED INJURIES BUT WAS NOT TRANSPORTED TO THE HOSPITAL. THE POLICE WAS NOTIFIED OF THE CRASHED AND A REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 170,000. (05/07/2010)

- MY WIFE AND I WERE INVOLVED IN A HEAD ON COLLISION (HIT BY A DRUNK DRIVER) OUR AIR BAGS DID NOT DEPLOY, I SUSTAINED A C7 FRACTURE, SCALPED BY THE REAR VIEW MIRROR (22 STITCHES TO HOLD MY SCALP) 6 STITCHES ON MY NOSE AND BRUISED KNEES. MY WIFE HAS A BROKEN NOSE ALL THE BONES IN HER RIGHT FOOT BROKEN AND BRUISED KNEES. (09/03/2011)

- THE CONTACT OWNS A 2003 CHEVROLET BLAZER. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 45 TO 50 MPH IN THE RAIN HE CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO AIR BAG WARNING INDICATIONS PRIOR TO THE CRASH. THE DRIVER SUSTAINED A CONCUSSION AND INJURIES TO HIS NECK, KNEE, AND FEET. A POLICE REPORT WAS FILED. THE DRIVER WAS TRANSPORTED TO THE HOSPITAL BY AMBULANCE. THE MANUFACTURER WAS CONTACTED AND OFFERED NO ASSISTANCE. THE FAILURE COULD NOT BE DIAGNOSED SINCE THE INSURANCE COMPANY DEEMED THE VEHICLE AS BEING DESTROYED. THE FAILURE AND CURRENT MILEAGE WAS APPROXIMATELY 130,000. THE VIN WAS UNAVAILABLE. UPDATED 5/2/11 *CN UPDATED 1/11/11 (01/23/2011)

- THE 2003 CHEVROLET TRAILBLAZER I HAVE OWNED SINCE I PURCHASED IT BRAND NEW IN 2003 WAS INVOLVED IN AN ACCIDENT ON 10/24/2010. MY KIDS WERE DRIVING WHEN ANOTHER VEHICLE SIDESWIPED THEM, CAUSING THEM TO LEAVE THE ROAD. WHEN THEY REENTERED THE ROAD, THE VEHICLE HIT THEM AGAIN CAUSING THE TRAILBLAZER TO FLIP OVER A GUARDRAIL AND ROLLOVER SEVERAL TIMES; LANDING ON ITS ROOF. THERE WERE FOUR VEHICLE OCCUPANTS (INCLUDING THE DRIVER). NEITHER DRIVER, PASSENGER SIDE NOR SIDE AIRBAGS DEPLOYED DURING THE ACCIDENT.  (10/24/2010)

- MY DAUGHTER HAD A WRECK IN HER VECHICLE AND THE AIR BAG DIDN'T DEPLOY.  (07/07/2009)

- 2003 CHEVROLET TRAILBLAZER. S10 COMEBACK FWD LTR TO POTUS RE COMPLAINT AGAINST GM REGARDING DEFECTIVE AIRBAG, INVOLVE IN CAR ACCIDENT AND THE AIRBAG DID NOT DEPLOY. THE CONSUMER STATED ANOTHER VEHICLE HIT A DEER, CROSSED THE CENTER LANE AND HIT THEIR VEHICLE HEAD ON. THE CONSUMER STATED THE SEAT BELTS DID NOT RESTRAIN THEM. (06/03/2008)

- THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 45-50 MPH IN INCLEMENT WEATHER, THE CONTACT CRASHED INTO A RETAINER WALL. SHE STATED THAT OTHER PASSING VEHICLES PUSHED HER VEHICLE INTO THE RETAINER WALL. THE AIR BAG DID NOT DEPLOY. SHE WAS ALSO INJURED WHEN THE CRASH OCCURRED. THE

MANUFACTURER STATED THAT THEY WOULD TAKE PICTURES OF THE
VEHICLE. THE VEHICLE HAS NOT BEEN REPAIRED. A POLICE REPORT WAS
FILED. THE FAILURE AND THE CURRENT MILEAGES WERE 82,000. THE
CONSUMER STATED IT WAS A HIT AND RUN ACCIDENT. UPDATED 04/07/10.
(12/26/2009)

- HAD CAR ACCIDENT WAS HIT BY ANOTHER VEHICLE AND HIT A RETAINING
  WALL GOING ABOUT 45 MILES AN HOUR AND AIR BAG DID NOT DEPLOY
  2003 TRAILBLAZER. (12/26/2009)

- THE AIRBAG DID NOT DEPLOY IN A FRONT-END COLLISION THAT WILL
  MOST LIKELY TOTAL THE VEHICLE. THE OTHER VEHICLE'S DID DEPLOY.
  (05/28/2008)

- THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 45
  MPH, THE CONTACT REAR ENDED ANOTHER VEHICLE. THE FRONT AIR BAGS
  FAILED TO DEPLOY. THERE WERE NO INJURIES AND A POLICE REPORT WAS
  FILED. THE VIN AND ENGINE SIZE WERE UNKNOWN. THE FAILURE AND
  CURRENT MILEAGES WERE 77,000. (03/13/2008)

- THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 32
  MPH, THE CONTACT CRASHED INTO A BUILDING. THE VEHICLE WAS
  DESTROYED. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED
  INJURIES TO HER MOUTH AND EYE. THE AMBULANCE ARRIVED ON THE
  SCENE AND TRANSPORTED THE CONTACT TO THE HOSPITAL. A POLICE
  REPORT WAS FILED. CHEVROLET HAS NOT BEEN NOTIFIED. THE VIN,
  ENGINE SIZE, AND NUMBER OF CYLINDERS WERE UNKNOWN. THE
  CURRENT AND FAILURE MILEAGES WERE 71,000. (02/08/2008)

- THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 45
  MPH, HER SON CRASHED INTO A DEER AND THE AIRBAGS DID NOT DEPLOY.
  THE CONTACT STATED THAT THE DEALER PLACED SENSORS ON THE
  AIRBAGS PRIOR TO THE CRASH. THE DRIVER SUSTAINED A HEAD INJURY.
  AS OF JANUARY 3, 2008, THE DEALER OR INSURANCE COMPANY HAD NOT
  INSPECTED THE VEHICLE. THE FAILURE AND CURRENT MILEAGES WERE
  82,000. A POLICE REPORT WAS FILED. THE VIN APPEARED TO BE INVALID
  AND THE ENGINE SIZE WAS UNAVAILABLE. (01/02/2008)

- THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 40
  MPH, THE CONTACT SWERVED TO AVOID AN ANIMAL AND CRASHED INTO
  A TREE. THE FRONT AIR BAGS FAILED TO DEPLOY. THE VEHICLE IS
  CURRENTLY AT A TOW YARD AND WILL BE TOWED TO THE INSURANCE
  COMPANY FOR INVESTIGATION. THE MANUFACTURER FILED A REPORT
  AND THE CONTACT IS AWAITING A CALL BACK. THE CURRENT AND
  FAILURE MILEAGES WERE 60,000. (11/10/2007)

- 2003 CHEVY TRAILBLAZER AIR BAGS NEVER CAME OUT AFTER HAVING
  IMPACT INTO TWO TREES FORCING THE DRIVER INTO THE STEERING
  WHEEL. NOTHING AT THIS TIME HAS BEEN CORRECTED TO REPAIR THE
  SUV. GM NEED TO BE ALERTED OF THIS FAILURE TO CORRECT THE
  PROBLEM! (11/22/2016)

- MY 2003 CHEVY TRAILBLAZER WAS HIT BY ANOTHER VEHICLE THAT RAN
  A STOP SIGN AND STRUCK THE DRIVERS SIDE. THIS CAUSED THE FRONT

WHEEL AND AXEL TO BREAK, CAUSED THE CAR TO LOOSE CONTROL, AND FLIP END OVER END LANDING UPSIDE DOWN. NONE OF THE FRONT OR SIDE AIR BAGS WORKED. (10/14/2016)

- THE CONTACT STATED WHILE TRAVELING 75 MPH THE VEHICLE SWERVED TO THE RIGHT AND THEN OVER CORRECTED. THE VEHICLE WENT INTO A DITCH, THEN FLIPPED SEVERAL TIMES HOWEVER, THE AIRBAGS DID NOT DEPLOY. SEAT BELTS WERE IN USE AND INJURIES WERE SUSTAINED. THE VEHICLE WAS TOWED FIRST TO A WRECKER SERVICE THEN IT WAS TAKEN TO AN INSURANCE COMPANY. NO INSPECTION AS TO WHY THE AIR BAGS DID NOT DEPLOY. THE MANUFACTURER HAS NOT BEEN ALERTED. UPDATED 04/06/06. (01/28/2006)

- CHEVROLET TRAILBLAZER 2003 UPON IMPACT AIRBAG DID NOT DEPLOY. THE CONSUMER REAR ENDED ANOTHER VEHICLE. (08/01/2004)

- PROBLEMS WITH 2003 CHEVROLET TRAILBLAZER RESULTING IN AN ACCIDENT. WHEN THE CONSUMER ATTEMPTED TO APPLY THE BRAKES, THE VEHICLE STARTED TO SKID. THE CONSUMER TRIED TO TURN THE WHEEL TO STRAIGHTEN OUT THE VEHICLE, BUT THE BRAKES LOCKED AND THE STEERING WHEEL CONTINUED TO GO TOWARD THE LEFT. THE CONSUMER WAS UNABLE TO MAINTAIN CONTROL OF THE VEHICLE AND SUBSEQUENTLY COLLIDED WITH A SEMI TRACTOR TRAILER. AFTER THE IMPACT, THE CONSUMERS VEHICLE CONTINUED GOING LEFT TOWARD ONCOMING TRAFFIC AND EVENTUALLY WENT LEFT INTO A RAVINE/DITCH. THROUGHOUT THE ENTIRE INCIDENT, THE CONSUMER HAD HER FOOT ON THE BRAKE AND THE VEHICLE WOULD NOT STOP OR SLOW DOWN. THE CONSUMER ALSO STATED THE AIR BAGS NEVER DEPLOYED. (07/14/2004)

- WE WERE INVOLVED IN AN AUTOMOBILE ACCIDENT WHILE DRIVING A 2003 TRAILBLAZER XT. A DRIVER TURNED IN FRONT OF US AT AN INTERSECTION ON A BUSY HIGHWAY WHILE WE HAD A GREEN LIGHT. I SLAMMED ON THE BRAKES SLOWING DOWN TO WHAT WE BELIEVE TO BE AROUND 35 MILES PER HOUR, AND WE HIT HEAD ON INTO THE SIDE OF HIS RANGE ROVER. NEITHER FRONT AIRBAG DEPLOYED. I SUSTAINED A BROKEN RIGHT FOOT AND MULTIPLE BRUISES TO MY KNEES. I ALSO HIT THE STEERING WHEEL WITH MY CHEST AND HAD MANY BRUISES TO MY CHEST. I AM DOING PHYSICAL THERAPY FOR THE INJURY MY SHOULDER SUSTAINED FROM HITTING THE STEERING WHEEL. THE CAR HAS AROUND $10,000 WORTH OF DAMAGE TO THE FRONT END. I REMEMBER OFFICIALS ON THE SCENE WERE SURPRISED OUR AIR BAGS DID NOT DEPLOY AND ENCOURAGED US TO LOOK INTO THAT. I AM SCARED TO HAVE THE CAR BACK. IF A HEAD-ON COLLISION LIKE THAT WILL NOT DEPLOY MY AIRBAGS, WHAT WILL? CAN I TRUST THEM IF I'M IN AN EVEN MORE SEVERE ACCIDENT. I KNOW THEY ARE NOT SUPPOSED TO GO OFF AT THE LEAST LITTLE ACCIDENT, BUT I WOULD NOT TERM THIS A SMALL ACCIDENT. (08/07/2004)

- WHILE DRIVING 60 MPH IN A RAIN STORM VEHICLE DROVE OVER AN OIL SLEEK IN THE ROAD WHICH CAUSED THE VEHICLE TO LOSE CONTROL AND ROLL OVER. UPON IMPACT, DUAL AIR BAGS DID NOT DEPLOY. NO INJURIES REPORTED. (08/22/2004)

- THE BRAKES MALFUNCTIONED CAUSING A ROLLOVER CRASH. THE AIRBAGS DID NOT DEPLOY. (06/03/2003)

- WHILE DRIVING AT 40 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. CONSUMER WAS WEARING SEAT BELTS, BUT NONE OF THE AIR BAGS DEPLOYED. CONSUMER SUSTAINED A BROKEN NOSE,SCRAPES, AND BRUISES TO CHEST AND WRIST. (03/24/2004)

- AFTER HITTING A TREE HEAD ON AIR BAGS DID NOT DEPLOY. (01/11/2004)

- LOSING CONTROL OF MY VEHICLE ON ICY PAVEMENT , VEHICLE SLID OFF OF THE ROAD , HEAD-ON INTO A TREE. DRIVERS SIDE AND PASSENGER SIDE AIR BAGS FAILED TO DEPLOY. SERIOUS INJURIES OCCURED , WHICH MAY HAVE BEEN LESSENED IF THE SAFETY FEATURES WE PAY FOR ACTUALLY WORK. ER DOCTORS AND STATE POLICE WERE TERRIBLY ANNOYED , SINCE THERE HAVE BEEN SEVERAL REPORTS OF SAME FAILURE IN DESIGN.  NO RESPONSE FROM DEALER OR MANUFACTURER, AS OF YET !!! (01/16/2004)

- WHILE DRIVING AT 45 MPH CONSUMER WAS BROADSIDED ON THE DRIVER'S SIDE BY A VEHICLE RUNNING A RED LIGHT. CONSUMER WAS WEARING A SEAT BELT, BUT THE SIDE AIR BAG DID NOT DEPLOY. POLICE ARRIVED ON THE SCENE, BUT NO ONE WAS CITED. CONSUMER SUSTAINED NON LIFE THREATENING INJURIES. (01/07/2004)

- TRAVELING 55 MPH WHEN ANOTHER VEHICLE CROSSED THE ROAD CAUSING ME TO HIT THE SIDE OF HIS VEHICLE HEAD ON. NO AIR BAGS DEPLOYED. (09/25/2003)

- CONSUMER STATES THAT WHILE DRIVING APPROXIMATELY 35-40MPH SLID OFF ROAD AND CRASHED INTO A DITCH HEAD-ON. BOTH DRIVER AND PASSENGER AIR BAGS DID NOT DEPLOY. TS (11/19/2002)

26.    New GM received customer complaints of airbag failures in front end collisions. Although Old GM issued a recall (03V051000) on some 2003 Chevrolet Trailblazers in 2003, neither Old GM nor New GM ever issued a recall to Plaintiff related to the failure of the airbags to deploy in a crash with frontal impact in his vehicle.

27.    Throughout the years in which it received these complaints, Old and New GM marketed GM brand vehicles as safe. For example, in a section called "Safety," Old GM's Chevrolet website stated:

**OUR COMMITMENT**

"Your family's safety is important to us. Whether it's a short errand around town or a cross-country road trip, Chevrolet is committed to keeping you and your family safe – from the start of your journey to your destination. That's why every Chevrolet is designed with a comprehensive list of safety and security features to help give you peace of mind."

28.    Similarly, Old GM promoted its Saturn vehicle line with television advertising tag lines like, "Putting people first," and, "Saturn. People First." Saturn's print ad campaign featured advertisements with statements such as the following: "Need is where you begin. In cars, it's about things like reliability, durability and, of course, safety. That's where we started when developing our new line of cars." In sum, in order to increase sales, Old GM touted the safety of its vehicles, and New GM did nothing to correct the false representations of safety to the millions of vehicle owners whose cars were affected by defects in its airbag system and passenger restraint systems. Further, throughout the existence of both Old and New GM, GM dealerships continued to sell "certified pre-owned cars" that still had defective airbag and passenger restraint systems. New GM, which profited indirectly from these sales, certified the safety of these vehicles to the public, explaining that the certification process involved testing of over a hundred components, including the airbag and passenger restraint systems. This safety certification was made despite many of the affected vehicles still having the defective airbag and passenger restraint systems. As a result, many owners and users of the affected vehicles purchased and drove the vehicles in reliance upon these safety representations.

**AIRBAG/PASSENGER RESTRAINT SYSTEM DEFECTS**

29.    Plaintiff's vehicle was equipped with driver and front passenger frontal airbags. However, these airbags did not deploy during the subject collision even though there was a frontal impact.

30.    Plaintiffs injuries were also caused by the failure of airbag to deploy in this collision.

31.     The defects in the design, manufacture and/or assembly of the Subject Vehicle's safety components and the negligence of GM as described herein, resulted in neither of the frontal airbags being deployed.

32.     Prior to February 1, 2016, Old GM designed, built, assembled, manufactured, tested, advertised, marketed, and distributed the Subject Vehicle, which contained design defects when it left the possession of Old GM.

33.     At all times material hereto, GM had a duty to use reasonable care to design, manufacture, market, modify and/or sell the Subject Vehicle and its Airbag System/Passenger Restraint System such that they would be reasonably safe for their intended purposes and pass without objection throughout the trade or industry.

34.     Notwithstanding this duty, GM carelessly, recklessly, negligently designed, manufactured, and sold the Subject Vehicle and its Airbag System/Passenger Restraint System such that there was an inherent defect in the Subject Vehicle, namely the Airbag System/Passenger Restraint System was subject to failure and did fail to operate as intended and designed at the time and place of the collision described herein.

35.     GM carelessly, recklessly and negligently failed to adequately test and inspect the Airbag System/Passenger Restraint System to determine whether prospective and foreseeable owners, users, drivers and occupants of the Subject Vehicle would be exposed to an unreasonable risk of physical harm during foreseeable automobile collisions of sufficient force to activate the Airbag System/Passenger Restraint System.

36.     All damages described herein were caused by the design, manufacture, marketing and distribution of a defective motor vehicle, both generally and in the following respects: (a) the vehicle was not crashworthy; the vehicle was defective, unsafe and inadequate for the use for

which it was made and intended to be used, including foreseeable collisions; the vehicle was not designed and equipped with alternative, technologically feasible and safer components which would have been capable of minimizing the risk of significant injury associated with frontal collisions and, therefore, the risks of harm outweighed the benefits of the selected defectively designed airbag system; the vehicle was defective, unsafe and inadequate for the use in which it was made and intended because it was equipped with an unsafe and defectively designed airbag system/passenger restraint system because in foreseeable collisions the airbag would not deploy in a necessary and timely manner; the vehicle was defective and unsafe and inadequate because it did not include necessary and adequate warnings that the airbag would fail to deploy under foreseeable circumstances; the vehicle was defective, unsafe and inadequate because the airbag system/passenger restraint system did not perform in a manner that an ordinary consumer would expect under the facts that will be established at trial; and the airbag system/passenger restraint system designed and selected for this model vehicle was inadequately and unsafely designed so that the airbags did not deploy in frontal collision event that warranted airbag deployment to protect the occupants.

37.    Because of its defective design, manufacture and production, especially the airbag system/ passenger restraint system in the Plaintiff's vehicle, this vehicle was inherently dangerous in the event of foreseeable frontal collisions.

38.    GM breached its duties owed to Plaintiff in that it failed to recall and retrofit Plaintiff's vehicle.

39.    Plaintiff was not aware of and could not have reasonably discovered the defective condition and dangerous nature of the Subject Vehicle and its Airbag System/Passenger Restraint System.

**CLAIMS AGAINST GENERAL MOTORS, LLC BROUGHT BY NAMED PLAINTIFF UNDER WEST VIRGINIA LAW**

**COUNT 1 – Negligence**

40.     The Named Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

41.     Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damages. New GM also acquired knowledge of Old GM's activities and the Airbag System/Passenger Restraint System defect, and other serious defects, via the mind of the employees, officers, managers, as well as via books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order. Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM.  Further, as identified therein, certain Named Plaintiff has claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damage and New GM is therefore liable to the Named Plaintiff.

42.     Old GM and New GM owed Named Plaintiff a duty to design, manufacturer, fabricate, assemble, inspect, market, distribute, sell, and/or supply products in such a way as to avoid harm to persons using them such as the Named Plaintiff.

43.     Old GM and New GM owed the Named Plaintiff a duty to detect known safety defects in GM vehicles.

44.     Old GM and New GM owed the Named Plaintiff a duty, once it discovered the Airbag System/Passenger Restraint System defect, to provide thorough notice of the defect,

including a warning that the defective vehicles should not be driven until an appropriate repair procedure is developed and performed.

45.    Old GM and New GM owed the Named Plaintiff a duty, once it discovered the Airbag System/Passenger Restraint System defect, to ensure that an appropriate repair procedure was developed and made available to drivers.

46.    Old GM and New GM knew that their customers, such as the Named Plaintiff, expect that the company will employ all reasonable efforts to detect safety defects, warn drivers of their existence, and develop and make available an appropriate repair procedure.

47.    Old GM and New GM efforts to discover, provide notice of, and provide repair procedures for safety related defects exist for the benefit of the Named Plaintiff and other drivers of GM vehicles.  Old GM and New GM was aware that by providing maintenance and repair information and assistance, including through its authorized dealerships, Old GM and New GM had a responsibility to the Named Plaintiff and other drivers to take the reasonable measures listed above.

48.    By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damages, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiff were among the product liability of Old GM assumed by New GM.

49.    Independent of any failures by Old GM as described herein, New GM breached its duties to the Named Plaintiff by failing to provide appropriate notice of and repair procedures for the Named Plaintiff's Defective Vehicle.  In doing so, New GM departed from the reasonable standard of care required of it.

50.     It was foreseeable that if the New GM did not provide appropriate notice and repair procedures for the Defective Vehicles, the Named Plaintiff and other drivers would be endangered.

51.     The Named Plaintiff's injuries were reasonably foreseeable to Old GM and New GM.

52.     The Named Plaintiff could not through the exercise of reasonable diligence have prevented the injuries caused by Old GM and New GM's negligence.

53.     Old GM's and New GM's acts and omissions, when viewed objectively from the actor's standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.  Old GM and New GM nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

54.     As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

## COUNT II - Strict Liability - *Morning Star v Black & Decker Mfg. Co.* (253 S.E.2d 666, W. Va. 1979)

55.     The Named Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

56.     Old GM and New GM, at all times relevant to this action, were engaged in the design, testing, manufacture, distribution, and sale of automobiles, including the Defective Vehicles.

57.     The Defective Vehicles were expected to and did reach users and consumers without substantial change in the condition in which it was sold.

58.     The Defective Vehicles were in a defective condition creating risk of harm to a user or a consumer, including Named Plaintiff.

59.     The defects set forth herein caused the Named Plaintiff's injuries.

60.     Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damage. As identified therein, the Named Plaintiff has claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damages and New GM is therefore liable to the Plaintiff.

61.     These injuries and losses were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which it is strictly liable to the Named Plaintiff pursuant to *Morning Star v Black & Decker Mfg. Co.* (253 S.E.2d 666, W. Va. 1979).  Alternatively, the injuries and losses were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which New GM is strictly liable to the Named Plaintiff pursuant to Restatement (Second) of Torts § 402A because these product liabilities were assumed by New GM.

62.     These injuries were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which it is strictly liable to the Plaintiff.  Alternatively, these injuries were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which New GM is strictly liable to the Plaintiff because these product liabilities were assumed by New GM.

63.    By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damage, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiff were among the product liabilities of Old GM assumed by New GM.  Independent of any failures by Old GM as described herein, New GM breached its duties owed to the Named Plaintiff as described herein.

64.    Plaintiff would show in the alternative that there was a manufacturing defect in Plaintiff's vehicle concerning the airbag system/passenger restraint system.

65.    As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

**COUNT III- Failure To Warn/Defective Use under *Morning Star***

66.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement, New GM expressly assumed liability for post-sale accidents involving Old GM vehicles causing personal injury, loss of life, or property damages. New GM also acquired knowledge of Old GM's activities and the defective Airbag System/Passenger Restraint System /Control Modules via the mind of the employees, officers, managers, books and records obtained and/or acquired as a result of the  June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent  Sale Order. Thus, the acts or omissions of Old GM are part of the foundation for the liability assumed by New GM. Further, Plaintiff has claims for a post-sale accident involving a New GM vehicle that caused personal injury or property damage and New GM is therefore expressly liable to Plaintiff for Old GM's negligence. New GM is also liable to Plaintiff for its independent, post- Sale negligence.

67.    Old GM was negligent in designing, manufacturing, and providing warnings for the Plaintiff's vehicle, as set forth in the paragraphs above (Airbag System/Passenger Restraint System Defects). Old GM acted unreasonably in manufacturing and selling vehicles with design, manufacturing, and informational defects and concealing such defects from Plaintiff, the public, and NHTSA.

68.    In addition, Old GM's failure to notify NHTSA and Old GM vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

69.    Old GM had a duty to ensure that its vehicles were reasonably safe to operate and did not contain defective components, and to produce vehicles with appropriate warning instructions. When Old GM learned that the Plaintiffs' vehicle was defective, it had a continuing duty to warn Plaintiff of the existence of the defect, including after the original sale of the vehicle.

70.    New GM was also negligent in providing warnings about Plaintiffs' vehicles and unreasonably concealing the design, manufacturing, and informational defects that New GM knew existed in Old GM vehicles. New GM had a continuing duty to monitor Old GM vehicles for safety-related defects and warn Plaintiff, the public, and NHTSA about safety- related defects in Old GM vehicles.   This duty is based on the direct and continuing  relationship between New GM and the owners of Old GM vehicles. Among other things, New GM had a statutory duty to warn owners of Old GM vehicles, including Plaintiff, of safety defects and did, in fact, warn owners of Old GM vehicles, including Plaintiff, of the safety defects (though the warning arrived years later than it should have and unreasonably minimized the risk of harm.

71.    In addition, New GM's failure to notify NHTSA and Subject Vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

72.    Thus, independent of any failures by Old GM and New GM as described herein, New GM breached its duties to Plaintiff by failing to provide appropriate notice of and repair procedures for the Airbag System/Passenger Restraint System defects in Plaintiff's vehicle. In doing so, New GM departed from the reasonable standard of care required of it.

73.    Old GM's and New GM's negligence proximately caused the injuries and damages sustained by Plaintiff, as set forth herein. New GM's negligence in manufacturing and selling a vehicle containing design and manufacturing defects and Old GM's and New GM's negligence in failing to adequately warn Plaintiffs about known defects in their vehicles and in violating the statutes and regulations that required Old GM and New GM to recall Plaintiffs' vehicles for safety-related defects proximately caused Plaintiffs' inability to avoid the crash made the basis of this lawsuit that left them severely injured or killed.

74.    New GM is liable for compensatory damages based on Old GM's conduct and based on New GM's own independent conduct.  New GM is further liable for fair and reasonable damages for pain and suffering, medical expenses, and/or damages as may be determined by the Court or the jury, as well as costs, expenses, and reasonable attorneys' fees.

**DAMAGES**

75.    The Named Plaintiff prays for damages against the Defendant in a sum of money in excess of the jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00) plus costs and any such other relief to be deemed just and equitable to which they are entitled.

76.     As a direct and proximate result of New GM's wrongful conduct, Plaintiff has been (and continues to be) damaged in the form of: (a) past and future pain and suffering; (b) past and future physical impairment; (c) past and future physical disfigurement; (d) past and future mental anguish; (e) past and future loss of consortium and/or loss of services; (f) past and future loss of income and/or lost earning capacity; (g) past and future reasonable and necessary medical expenses; and (h) past and future loss of enjoyment of life' (i) loss of function; (j) prospective medical care and medication costs; and (k) property damage to his vehicle sustained in the crash.  All of the damages sustained by Plaintiffs were reasonably foreseeable by New GM, and exceed the minimum jurisdictional limits of this Court.  All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred.

**PRE-JUDGMENT INTEREST AND POST-JUDGMENT INTEREST**

77.     Lastly, Plaintiffs are entitled to pre-judgment and post-judgment interest (to be determined).

**JURY DEMAND**

78.     The Named Plaintiff requests a trial by jury.

**PRAYER**

79.     For the foregoing reasons, the Named Plaintiff prays that the Defendant be cited to appear and answer herein, and that upon final hearing of the cause, judgment be entered for the Plaintiff against Defendant for actual damages, as alleged, together with pre-judgment interested (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which Named Plaintiff may be entitled at law or in equity.

Dated: April 27, 2018

RESPECTFULLY SUBMITTED,

/s/ *Mitchell A. Toups*
Mitchell A. Toups (TX Bar # 20151600)
WELLER, GREEN, TOUPS & TERRELL, LLP
2615 Calder Ave., Suite 400
Beaumont, TX 77702
Telephone: (409) 838-0101
Facsimile: (409) 832-8577
Email:  matoups@wgttlaw.com

James R. Dugan, II
David Scalia
Lanson Bordelon
THE DUGAN LAW FIRM, APLC
365 Canal Street, Suite 1000
New Orleans, Louisiana 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181

Gregory K. Evans (TX Bar  No. 24002065)
Law Offices of Gregory K. Evans, PLLC
3900 Essex, Suite 690
Houston, TX  77027
(713) 840-1299
Facsimile:  (281) 254-7886
Email:  greg@gevanslaw.com

*Attorneys for Plaintiffs*